32 N.J. Super. 357 (1954)
108 A.2d 451
NATHAN SILVERSTEIN AND JULIAN SILVERSTEIN, T/A SILCO CIGARETTE SERVICE, PLAINTIFFS-APPELLANTS,
v.
GEORGE DOHONEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1954.
Decided October 13, 1954.
*359 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Maurice C. Brigadier argued the cause for plaintiffs-appellants (Mr. Sol Schulman, attorney; Mr. Seymour Margulies, on the brief).
Mr. Abraham J. Slurzberg argued the cause for defendant-respondent (Mr. Louis Bolstein, attorney; Mr. Maurice A. Cohen, of counsel).
Mr. Irving I. Vogelman argued the cause for defendants-respondents in companion case, Silverstein v. Keane, et al., A-544-53 which is encompassed by this opinion.
*360 The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Plaintiffs here appeal from a judgment of involuntary dismissal. The action is for damages for breach of contract. The parties executed a writing under date of December 11, 1952, whereby defendant "leased" to plaintiffs for a term of three years so much space of defendant's premises as was necessary to permit the installation of a "cigarette vending machine or machines." It was agreed that for the period of the lease no cigarettes should be sold on the premises except through plaintiff's machines.
The testimony would justify a finding that defendant breached the agreement with plaintiffs. Defendant does not dispute that this is so but contends that an enforceable obligation did not exist by reason of considerations discussed hereafter.

I
The writing recites a conventional consideration of $1 and other good and valuable consideration and on its face there is evidence of payment to defendant of the sum of $40 as a "bonus," which payment, according to the testimony, was in fact made. The writing, however, evidences that a further substantial consideration was contemplated in these terms:
"As a further consideration for this letting, the Silco Cigarette Service agrees to pay any and all commissions for sales of cigarettes through the said machines, and the said commissions earned are to be paid directly to the lessor herein every month during the running of this Agreement."
For a period prior to the execution of the writing, plaintiffs had a machine upon defendant's premises and paid commissions on cigarette sales. Testimony was admitted from which the trier of facts could conclude that, when the writing here involved was executed, it was agreed that the existing rate of commission would apply. Such testimony was excluded by the trial judge in a companion case, and we therefore discuss here the application of the parol evidence rule.
*361 Defendant contends that the writing constitutes the entire agreement of the parties; that its terms may not be augmented by the parol proof just described; and that, if such proof is excluded, the agreement between the parties as integrated in the writing does not constitute a binding contract for want of an expression therein fixing the rate of commissions.
We need not consider whether, if the parol proof as to the rate of commission were inadmissible, the law would import an undertaking to pay at a reasonable rate. That question is not presented because no barrier exists to the mentioned proof. Unless a requirement exists that an agreement be in writing, the parties may bind themselves contractually by writing or oral understanding or by a combination of both. The parol evidence rule inhibits additions to or variations from a writing intended to constitute the entire agreement and as well contradictions of so much of an agreement as may have been reduced to written form. But it is clear that parol evidence as to the rate of commission does not offend these principles. The writing on its face evidences that a commission was intended. Proof of the rate does not add to the obligations of the parties under the writing, but rather expounds the obligation which the writing recognizes to be a part of the agreement. Nor, of course, does the oral testimony contradict or vary any written term. Perhaps to express it another way, the writing does not purport to be the entire understanding and, on its face, it is apparent that something was left out, and hence the admission of the testimony squares with the rule as stated in Ross v. Orr, 3 N.J. 277, 282 (1949):
"* * * it is equally true that if the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible. Naumberg v. Young, 44 N.J.L. 331 (Sup. Ct. 1882); Cohen v. Cohn, 102 N.J. Eq. 245 (E. & A. 1928); R.E. Brooks Co. v. Storr, 111 N.J.L. 316 (E. & A. 1933); Downs v. Jersey Central Power & Light Co., 117 N.J. Eq. 138 (E. & A. 1934); Pelinger v. Bernfeld, 133 N.J.L. 31 (E. & A. 1945); Zone Co. v. Service Transportation Co., Inc., 137 N.J.L. 112 (Sup. Ct. 1948)."
*362 Defendant questions the sufficiency of the testimony to support a finding that, when the writing was executed, the parties in fact agreed that the prior rate was to continue. This contention rests upon one possible interpretation of the evidence, but defendant's view need not be accepted by the trier of the facts, and of course plaintiffs are entitled to the most favorable view of the testimony upon a motion for judgment. McKinney v. Public Service, 4 N.J. 229, 243 (1950); O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953). The testimony, particularly in the light of the prior course of dealings between the parties, would amply support a finding against defendant on this issue.
Defendant further construes the testimony to be that plaintiffs reserved the right to vary the rate of commission upon an arbitrary basis, devoid of standard. We do not read the record that way, but rather we gather that different rates were fixed by agreement in each particular transaction with an operator of an establishment, depending upon the facts in each contractual setting. Hence, we need not, and should not, consider the legal effect of a reservation of a character which defendant postulates.

II
The agreement provides:
"The term of this Agreement is for three years from the date hereof, and thereafter for a like period until this Agreement is cancelled by either party by notice in writing given to the other thirty (30) days before the annual termination date.
I/we also agree not to sell or allow to be sold any cigarettes in any other manner on the premises, either directly or indirectly, for the period of this lease, excepting through machines owned and operated by the Silco Cigarette Service, and I/we do further agree that the said machines above referred to are not and shall not be subject to any liens or mortgages covering the premises, and that the said Silco Cigarette Service may remove the machine or machines from the above mentioned premises at any time, day or night, without obligation or liability." (Italics added)
Defendant urges that the italicized portion entitles plaintiffs to terminate their obligation at any time without liability *363 and, upon that construction, contends the agreement to be illusory. Plaintiffs dispute defendant's reading of the contract and suggest that the true office of the questioned provision is to avoid a claim for trespass upon entry to remove the machine without in any wise diminishing plaintiffs' obligation to perform during the stated three year term.
Were defendant correct in his construction of the writing, we would not be prepared to say that effective consideration is lacking. Defendant accepted a payment of $40 and, if a businessman accepts such consideration for an arrangement which the other party may cancel at will, perhaps the law should not hesitate to enforce the bargain. It is true that where the consideration consists of an exchange of promises, an unqualified reservation of a right in a party not to perform will defeat the apparent contract although "the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting such legal detriment as will satisfy the requirement of sufficient consideration * * *." 1 Williston on Contracts (rev. ed. 1936), sec. 105, p. 365. Whether the cash consideration here paid should suffice to support an action upon the executory portion of the agreement, particularly in the light of the restrictive covenant not to permit other sales of cigarettes during the three year period, is a question which should be left for a case requiring its solution. We think this case does not present the issue since, as we read the writing, the parties did not contemplate an unilateral obligation upon defendant in consideration of the cash paid for the signing of the contract, but rather envisioned an arrangement which would yield something more substantial, namely, commissions upon sales during a minimum period of three years.
The writing provides that "the said cigarette vending machine or machines to remain upon the premises for the sale of cigarettes exclusively for a period of three years," and provides for the payment of commissions on sales each month. Although its phrasing does not literally prescribe a promise by plaintiffs to keep the machine with supplies upon defendant's premises, the conclusion is irresistible that the agreement *364 is instinct with that obligation. Atlantic City v. Farmers' Supply and Products Co., 96 N.J.L. 504, 508 (E. & A. 1921); Wood v. Lucy, Lady Duff Gordon, 222 N.Y. 88, 118 N.E. 214 (Ct. of App. 1917). The first full paragraph of the writing quoted above deals with a cancellation "by either party" on 30 days' written notice before the annual termination. Thus far the concurring obligations of both parties during the agreed term is clear enough.
The italicized portion of the second quoted paragraph if construed as defendant urges, would be utterly incompatible with the previous paragraph which expressly deals with cancellation. Defendant's interpretation cannot be accepted for several reasons. In the first place, the several parts of a contract should be so construed as to avoid conflict in its terms. Secondly as expressed by Professor Corbin in his work on Contracts (1950 ed.), p. 290, § 95.
"If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left."
And lastly, the writing, being a form prepared by plaintiffs, falls within the view expressed in Anfield v. Love, 5 N.J. Super. 347, 351 (App. Div. 1949):
"Even if the intention be deemed doubtful or obscure, we reach the same result. The language to be construed was the language of the defendant, and under well-settled rules, when words of intention bear more than one reasonable meaning, an interpretation is preferred which operates more strongly against the party from whom they proceed, unless the use by him is prescribed by law. Restatement, Contracts, N.J. Annot., § 236. If the intention is doubtful or obscure, the most fair and reasonable construction imputing the least hardship on either of the contracting parties should be adopted. International Signal Co. v. Marconi Wireless Telegraph Co. of America, 89 N.J. Eq. 319 (Ch. 1918); affirmed, sub nom. International Radio Telegraph Co. v. Marconi Wireless Telegraph Co. of America, 90 N.J. Eq. 271."
These last quoted principles of construction are no less applicable because they here happen to bolster the cause *365 of the draftsman. The application of the principles does not depend upon who is the party plaintiff. Rather its role lies in the interpretation of the obligations of the parties under the agreement and the application is the same whether the draftsman is prosecuting an action such as the one here or is defending a suit for damages for his failure to perform.
We conclude accordingly that the italicized language does not entitle plaintiffs to cancel the contract or to omit to perform their obligations during the agreed time. Hence the insistence that defendant's obligation is not supported by consideration is without merit.

III
Defendant asserted the contract falls within the statute of frauds, R.S. 25:1-5(e). Whether it does is of no moment in view of R.S. 25:1-8 which provides:
"The consideration of any promise, contract or agreement required to be put in writing, by sections 25:1-1 to 25:1-7 of this title, need not be set forth or expressed in such writing, but may be proved by any other legal evidence."
Judgment reversed, costs to abide the result of the retrial.