**MAGRUDER QUARRY & COMPANY, L.L.C., Plaintiff/Respondent,**

v.

**Joseph M. BRISCOE, Shirley M. Briscoe, Joseph M. Briscoe II, Peggy A. Briscoe, Debra A. Owens f/k/a Debra A. Briscoe and Ray & Briscoe, Inc., a/k/a R&B Quarry, Defendants/Appellants.**

**No. ED 79869.**

Missouri Court of Appeals, Eastern District, Division Three.

June 25, 2002.

Application for Transfer to Supreme Court Denied Aug. 22, 2002.

Application for Transfer Denied Sept. 24, 2002.

Jerry L. Suddarth, O'Fallon, Richard A. Wunderlich. St. Louis, for appellant.

Joseph A. Brannon, Hannibal, Robert J. Selsor, Valerie J. Pacer, St. Louis, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

On the court's own motion, the opinion in the above styled case handed down on

May 28, 2002 is withdrawn. A new opinion is attached. Respondent's motion for rehearing is denied as moot.

Joseph M. Briscoe, Shirley M. Briscoe, Joseph M. Briscoe II, Peggy A. Briscoe, Michael E. Briscoe and Deborah A. Briscoe ("Briscoes"), lessees, appeal from a judgment of the Circuit Court of Lincoln County, Missouri, which declared that a quarry lease agreement with Magruder Quarry and Company, L.L.C. ("Magruder"), successor lessor and owner of the quarry, was null and void. Magruder claimed the lease lacked mutuality of obligation because Briscoes were not obligated to mine or sell any rock. Briscoes contend the trial court erred in holding the lease null and void due to a lack of mutuality, because the promise was not illusory in that lessees were obligated to exercise good faith and use reasonable efforts to mine and sell the rock. We reverse and remand.

On February 5, 1994, Briscoes drafted and executed a quarry lease agreement ("lease") with Noble I. Presley Jr., Lois Faye Presley, Claude T. Presley, Iris Presley, and Laura May Presley ("Presleys") as lessors. Briscoes leased the land from the Presleys for the purpose of mining, quarrying, removing, and marketing limestone rock. The lease provided, in pertinent part:

(1) The Lessors do hereby grant, demise, lease and let unto the Lessees, for the purpose of mining, quarrying, operating for, removing and marketing limestone rock, rock, sand, soil and dust, or any of said material either in the raw state or processed in ground, burned, clinkered or hydrated state or any other processing of the raw materials as may be found in, under and upon all that certain tract of land lying, being, being and situated in the County of Lincoln, State of Missouri, known and described as follows:

\* \* \* \*

(4) The Lessees shall have exclusive use of the aforementioned property without any restrictions upon their use of said property. They shall have the exclusive use of all land, minerals, resources, fixtures, buildings and any other item or items that may be found in or upon the property.

(5) The rental during the initial term of this Lease shall be eighteen cents ($0.18) per ton of any and all rock product sold during the preceding month, payable upon the fifteenth day of each month, with the first payment being due March 15, 1994, and subsequently [sic] monthly payments being due and payable on the same day thereafter for the term of the Lease.

(7) In the event of default by the Lessees in the performance of any of the promises or conditions set forth herein in this Lease, or the payment of any rent due Lessors, and in the event that said default continues for a period of thirty (30) days, Lessors shall notify Lessees by registered mail of such default, and if rent is not paid, or the other covenants and conditions not performed within thirty (30) days thereafter, Lessors shall be entitled, at their option, to the possession of the demised premises, subject to the provisions of the next numbered paragraph herein.

\* \* \*

(9) This Lease shall be assignable by Lessees upon written approval of Lessors. That approval shall not be unreasonably refused.

On November 7, 1997, Magruder Quarry and Equipment Company purchased the leased land from the Presleys, subject to

the lease agreement with the Briscoes. Magruder accepted rent payments from the Briscoes pursuant to the lease. In early 1998, Fred Weber, Inc. ("Fred Weber") contacted the Briscoes and offered $800,000 to purchase their interest in the lease. Briscoes requested approval from Magruder for the assignment of the lease to Fred Weber. Magruder informed the Briscoes that it would not approve the assignment, citing Fred Weber was an arch-competitor and an assignment to Fred Weber would severely hinder Magruder's ability to compete in the geographic market because Fred Weber would then control 90% of the market share of high-quality limestone. In September 1998, Magruder stopped accepting rental payments because it believed that Fred Weber had purchased Briscoes' interest in the lease.

Magruder filed a petition against the Briscoes. Count I sought a declaratory judgment that the lease was null and void due to a lack of mutuality, Count II for breach of contract claimed the lease was assigned to Fred Weber without Magruder's approval, and Count III requested ejectment of the Briscoes from the leased land. The Briscoes filed a separate petition alleging that Magruder breached the terms of the contract by unreasonably withholding its consent to the assignment of the lease and tortiously interfering with Fred Weber's purchase of the assignment from the Briscoes. The suits were consolidated for trial.

After a bench trial, the trial court found the lease to be null and void and ordered Briscoes ejected from the premises. The trial court found Magruder's breach of contract claim in Count II to be moot. The trial court denied Briscoes' claims for breach of contract and tortious interference. Briscoes now appeal.

■ The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In Briscoes' first point on appeal, they contend that the trial court erred in holding the lease was null and void due to a lack of mutuality of obligation. Briscoes argue the lease agreement was not invalid because the promise to pay rent in the amount of eighteen cents per ton of rock sold from the quarry during the preceding month was not an illusory promise in that they, as lessees, were legally obligated to exercise good faith and use reasonable efforts to mine and sell the rock.

Magruder argues that the lease was null and void because it did not obligate the Briscoes to do anything, or in other words, that it was within their power not to mine any rock, thereby relieving them of any duty to pay rent to Magruder. Magruder contends the lease is invalid due to a lack of consideration rendering the promise illusory.

■ The phrase "illusory promise" means "words in promissory form that promise nothing." CORBIN ON CONTRACTS Section 5.28. An illusory promise is not a promise at all and cannot act as consideration; therefore no contract is formed. *Id.*

■ The tendency of the law, however, is to uphold the contract by finding the promise was not illusory when it appears that the parties intended a contract. *Id.* "Frequently a court will find an apparently illusory promise to be accompanied by an implied promise to use 'best efforts' or 'reasonable efforts.'" *Id.* Consequently, an implied obligation to use good faith is enough to avoid finding a contract null and

void due to an illusory promise. *Id.* Such is the case here.

Justice Cardozo, in his famed opinion of *Wood v. Lucy, Lady Duff-Gordon* articulated the theory of implied covenants of good faith and reasonable efforts. 222 N.Y. 88, 118 N.E. 214, 215 (1917). Cardozo stated that even though the plaintiff did not promise in so many words to use reasonable efforts to market defendant's designs, "such a promise is fairly to be implied ... A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed. If that is so, there is a contract." *Id.* (citations omitted).

■ In Missouri, the covenants of good faith and fair dealing are implied in every contract. *Home Shopping Club, Inc. v. Roberts Broadcasting Co.,* 989 S.W.2d 174, 179 (Mo.App.1998). In *National Refining Co. v. Cox,* 227 Mo.App. 778, 57 S.W.2d 778 (1933) defendant and his wife leased their gasoline station to the plaintiff oil company. *Id.* at 779, 57 S.W.2d 778. The lease provided that the premises were to be used as a filling and automobile service station and the rent was to be one cent per gallon of gasoline sold. *Id.* In addition to the lease, the defendant and the plaintiff entered into an agency contract, which provided for the employment of defendant by plaintiff as its agent to operate the station. It also stipulated defendant could only sell the plaintiff's petroleum products. *Id.* The defendant fell behind in remitting payments to plaintiff for product sold, and the plaintiff sued. *Id.* at 780, 57 S.W.2d 778. Defendant claimed that the lease was void for lack of mutuality in that the plaintiff did not obligate itself to perform anything and it was "left to the wish and the will of the plaintiff" whether it will deliver any gasoline to the premises. *Id.* at 781, 57 S.W.2d 778. The court disagreed, holding even though the lease did not in express terms provide that the plaintiff must deliver a certain quantity of gasoline to the station "such obligation on the part of the plaintiff must be implied from the terms of the lease." *Id.* The court reasoned that there was no way for the defendant to earn the rent unless plaintiff kept the station supplied with its petroleum products, and it therefore followed that plaintiff was required to deliver the petroleum to the station. *Id.*

This court more recently upheld the implied covenants of good faith and fair dealing in *Wooten v. DeMean,* 788 S.W.2d 522 (Mo.App.1990). There, a buyer promised to purchase certain property, but his promise was conditioned on his ability to obtain a mortgage. *Id.* at 527. The sellers argued that the contract was void for lack of mutuality, claiming the purchaser's promise to buy was conditioned on his ability to obtain outside financing. *Id.* The court held that "[a]lthough the agreement did not impose upon [purchaser] an express obligation to use reasonable efforts to obtain the financing set forth in the contract, such an obligation is implied by law." *Id.*

We find these cases instructive. Although the lease does not in express terms provide that Briscoes must mine and sell the limestone, such an obligation must be implied. In fact, Briscoes did mine and sell the rock and paid Magruder rent pursuant to the terms of the lease for almost one year before Magruder claimed the contract was void.

Magruder argues that *Cox* and *Wooten* are distinguishable because the obligation of one party was conditioned upon the action of the other party to the contract, or upon the action of an outside party. We disagree. In these cases, the party charged with the performance of the alleged illusory promise was held to a requirement to act in good faith and make

reasonable efforts, therefore creating mutuality of obligation, and thus a valid contract. CORBIN ON CONTRACTS discusses the scenario described in *Wooten* and states:

In such an arrangement, there is an implied promise to make reasonable efforts to obtain a mortgage. Thus, the promise to buy is not illusory because the buyer does not possess an unconditional power to refuse to perform. An implied obligation to use good faith is enough to avoid the finding of an illusory promise.

Section 5.28.

Magruder, however, cites a U.S. District Court case, *M.J.S. Resources, Inc. v. Circle G. Coal Co.*, 506 F.Supp. 341 (E.D.Mo. 1980), for the proposition that a promise that lacks mutuality is void. Magruder's reliance is misplaced. In *M.J.S.*, even though the court found the contract void for lack of mutuality, the contract stated that the defendant was not obligated to mine coal *unless specifically requested* to do so by plaintiff. *Id.* at 347. The contract, however, did not obligate plaintiff to make any such request. *Id.* When terms are present that directly nullify the implied covenants of good faith and reasonable efforts, as in *M.J.S.*, the contract is void for lack of mutuality. The case at bar is distinguishable because the lease did not contain words that negated the implied covenants of good faith and fair dealing.

Magruder also claims that the Statute of Frauds bars any attempt to use the implied covenant of good faith to impose an obligation on Briscoes to use reasonable efforts to mine and sell rock. Specifically, Magruder claims that omission of rental terms and the consideration for a contract violates the Statute of Frauds. Magruder's argument is without merit. In this case the lease did include specific rental terms. The implied covenants of good

faith and fair dealing merely imposed an obligation on the lessees to use reasonable efforts to mine and sell rock product.

■ Magruder also argues that the Briscoes drafted the lease and therefore any ambiguity should be construed against the lessee as the drafter. *Jacobs v. Georgiou*, 922 S.W.2d 765, 771 (Mo.App.1996). We disagree. This rule of construction comes into play only when there is ambiguity in the writing. *Cox*, 57 S.W.2d at 781. Here, the question is one of mutuality of obligation, not of ambiguity. "[T]he fact that it is necessary to imply matters in a contract or lease in order to uphold its validity does not give rise to an ambiguity." *Id.* at 782, 57 S.W.2d 778. The applicable rule of construction is against construing a contract as unilateral and in favor of the construction that will make it valid, if such a construction can reasonably be made. *Id.*

Here, the trial court erred when it found the contract null and void due to a lack of mutuality. Abiding by Missouri law, we read into the contract the implied covenants of good faith and reasonable efforts and find the contract was supported by consideration, and was therefore enforceable. Point one is granted.

In Briscoes' second point on appeal, they contend that the trial court erred in denying their claim for breach of contract, which asserted that Magruder breached the terms of the lease agreement by unreasonably withholding its consent to the assignment of the lease to Fred Weber. Although the trial court did not set out in its judgment the grounds for its denial of Briscoes' breach of contract claims, it did declare the lease agreement null and void. Because the trial court held the lease agreement was null and void, it could not have decided the merits of Briscoes' claim for breach of that contract. As a result of

our holding that the contract was valid and enforceable, it is therefore necessary to remand the case to the trial court for disposition of Briscoes' breach of contract claim. Since point one is dispositive, we need not discuss Briscoes' remaining points on appeal.

In its first amended petition, Magruder also asserted a claim that Briscoes breached the lease. The trial court found Magruder's claim was moot because of its ruling that the lease was illusory and void. In light of this court's determination that the lease was valid and enforceable, on remand the trial court should also dispose of Magruder's breach of contract claim.

The judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.

PAUL J. SIMON and MARY R. RUSSELL, JJ., concur.